```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
_____
                                    :
RALPH DENNIS,                       :
                                    :
          Petitioner,               :     Civ. No. 19-0893 (NLH)
                                    :
     v.                             :     OPINION
                                    :
UNITED STATES OF AMERICA,           :
                                    :
          Respondent.               :
_____:
```

APPEARANCES:

Ralph Dennis
64625-050
FCI -Petersburg Low
Inmate Mail/Parcels
P.O. Box 1000
Petersburg, VA 23804

    *Petitioner Pro se*

Rachael A. Honig, Acting United States Attorney
Norman Joel Gross, Assistant United States Attorney
Office of the U.S. Attorney
401 Market Street
4th Floor
Camden, NJ 08101

    *Counsel for Respondent*

HILLMAN, District Judge

    Ralph Dennis ("Petitioner") is proceeding on an amended motion to vacate, correct, or set aside his federal sentence pursuant to 28 U.S.C. § 2255. ECF No. 4. Respondent United States moves to dismiss the motion. ECF No. 16. Petitioner opposes dismissal. ECF No. 17.

For the reasons that follow, the Court will grant the motion to dismiss.  No certificate of appealability shall issue.

I.  BACKGROUND

The United States Court of Appeals for the Third Circuit set forth the facts of Petitioner's underlying conduct in its precedential decision on direct appeal:

> In June 2012, ATF agents in Camden, New Jersey met with Kevin Burk, a convicted felon facing forgery charges who had been cooperating with local law enforcement as a confidential informant. The agents were investigating a string of robberies in Southern New Jersey and Philadelphia County, Pennsylvania. Upon being questioned about associates who were involved in robberies or violent crimes, Burk responded that Dennis had spoken of conducting home invasions and other robberies. The ATF agents were unaware of Dennis prior to this. Burk added that Dennis recently had been detained at the Camden County Jail.
>
> . . . .
>
> ATF agents instructed Burk to ask Dennis for his help, supplying Burk with a fictional back-story: he was to tell Dennis that he needed his help to carry out a robbery. . . . Burk tried, on a number of occasions, to enlist Dennis' help in various robbery schemes.  Dennis said that, three times, Burk asked for his help to carry out bank robberies.  He declined each time.  On Burk's third attempt, Dennis recalls that Burk told him he already had the guns and the scanner needed for the job. Dennis says that he refused to help Burk. Two weeks later, Burk approached him to ask for his help in robbing a stash house.  This time, Burk told him that the job was necessary to help out his mother who had cancer. Burk told him that "Rock," a disgruntled drug courier for a Mexican drug cartel, was the point person for the job.  Burk said that the robbery would yield 30 to 40 kilograms of cocaine with a street-value of $2 million. Dennis agreed.  This was the beginning of the ATF's reverse sting operation.

2

. . . .

Burk set up the first meeting between the ATF agent, Dennis and Mitchell for June 21, 2012. Before the meeting, Burk told Dennis and Mitchell that they needed to impress Rock because he was "the real thing." Burk asked them to "play the role" to impress Rock so that they could get the job. Dennis said that he and Mitchell complied.

The ATF agent posing as Rock . . . met with Burk, Dennis, and Mitchell in Pennsauken, New Jersey, and provided more details about the job. . . . Dennis initially stated that they would have to put the guards down, and that they would "fold" when he put a gun in the mouth of one of the guards. Later in the meeting he suggested they only subdue and tie up the guards. Dennis also told Rock that they would bring a .40 caliber gun and a .357 magnum gun. Nonetheless, he testified that he felt he was in over his head, though he did not show this to Rock. He said that he was saying these things solely to impress Rock, and to probe his intent. Dennis testified that he did not own a gun. He last had a gun when he was fifteen years old. He explained that the reason for this was that he "wasn't trying to go that route, like whatsoever, as far as hurting somebody or somebody hurting me or anything. So, I just got rid of [the gun]."

Rock offered Mitchell and Dennis a chance to back out. Both declined this opportunity. . . .

During two later meetings, on June 27, 2012 and on July 10, 2012, the group discussed their plan. . . . . He told the group that there were usually between 15 and 20 kilograms of cocaine at the stash house, and that it was guarded by two individuals, one being armed. The conversation moved on to how they would be compensated for the job. Rock cautioned them that they would need to repackage the cocaine they received from the heist to avoid being tracked by the cartel. Dennis responded that he had already thought of that, and planned to split the kilogram packages of cocaine and re-wrap them.

. . . .

Mitchell requested a third meeting to get clarity on the specific roles each one would play in the robbery and

3

how they would approach the stash house. Burk called Rock to set it up. At that July 10, 2012 meeting, they talked through how Rock, [John] Mitchell, and a third man . . . would enter. Mitchell and Dennis agreed that those who entered the stash house behind Rock should present themselves as DEA agents and subdue with stun guns and zip ties both the armed guard at the door and the unarmed guard watching over the cocaine bricks in the kitchen. Dennis stated that their objective was to get in and out quickly with "nobody gettin' hurt." . . . Dennis testified that he was very nervous at this point and wrestled with whether he wished to follow through on the job.

After the July 10, 2012 meeting, Burk reminded Dennis that he told the group he had two guns he would bring. Dennis questioned whether another gun was needed . . . . Burk pressed that it was necessary for Dennis to have a gun in his role as lookout. The next day, Burk stopped by again and gave Dennis a red bag containing a gun. He asked Dennis to keep the bag at his residence. Dennis testified that this was one of the guns found when they were arrested. A second gun found at that time belonged to Mitchell.

Dennis received a message on July 15, 2012, that the robbery would take place on the next day. . . . Dennis, Mitchell, and Hardee met that evening to discuss the plans for the robbery. The next morning, the group departed for Cherry Hill, New Jersey, in Burk's vehicle. At that point, they were in possession of two guns, one stun gun, gloves, and zip ties. Once in Cherry Hill, the group traveled in two cars to a storage facility to prepare for and rehearse the robbery. Once there, Rock told the group that they could leave his share of the cocaine in the storage unit. . . . Rock talked through the details of how the stash house is set up. The group then walked through the robbery, rehearsing how it would unfold. After they completed this walk-through, ATF agents rushed in on the group and arrested Dennis, Mitchell, and Hardee.

United States v. Dennis, 826 F.3d 683, 686-89 (3d Cir. 2016).

On April 17, 2013, a federal grand jury sitting in Camden, New Jersey issued a three-count superseding indictment charging

4

Petitioner with conspiracy to commit Hobbs Act robbery, 18 U.S.C. § 1951(a) (Count I); conspiracy to distribute more than five kilograms of cocaine, 21 U.S.C. § 841(a) and (b)(1)(A), 21 U.S.C. § 846 (Count II); and using and carrying a firearm during an in relation to a crime of violence, the Hobbs Act robbery conspiracy, 18 U.S.C. § 924(c)(1)(A)(i) and § 2 (Count III). United States v. Dennis, 12-cr-0734 (D.N.J. Apr. 17, 2013) (ECF No. 35). Petitioner proceeded to trial and was convicted on all counts. Id. (May 23, 2013) (ECF No. 57). The Honorable Joseph E. Irenas sentenced Petitioner to 120 months on Counts I and II, to be served concurrently, and a consecutive sentence of 60 months for Count III. Id. (Aug. 5, 2014) (ECF No. 108).

Petitioner appealed to the Third Circuit. Dennis, 826 F.3d 683. The Court of Appeals held that the trial court erred by failing to charge the jury as to entrapment on the robbery-related charges and reversed the convictions on Counts I and III. Id. at 695-96. The Court affirmed the conviction and sentence as to Count II. Id. The matter was remanded to the trial court for a new trial on Counts I and III. Id.

The United States elected not to pursue a new trial on the reversed charges, so the Honorable Jerome B. Simandle entered an

order dismissing Counts I and III.[1] Dennis, No. 12-cr-0734 (Jan. 26, 2018) (ECF No. 152). Petitioner subsequently filed a motion for a reduction of sentence under 18 U.S.C. § 3582(c). Id. (Apr. 30, 2018) (ECF No. 153). This Court denied the motion as Petitioner "does not qualify for a reduction because he was designated a Career Offender at the time that he was sentenced. A Career Offender is ineligible even if, as was the case here, the District Court, at the original sentencing proceeding, departed below the Career Offender Guideline range upon determining under U.S.S.G. § 4A1.3 that Career Offender status overrepresented the severity of the defendant's criminal history." Id. (Sept. 27, 2019) (ECF No. 161). "In addition, the defendant was sentenced under Cou[n]t Two and only Count Two of the Superseding Indictment. . . . The statutory mandatory minimum for that Count as found by the jury is ten (10) years or 120 months. The defendant was sentenced to a term of 120 months. The Court may not sentence the defendant below the statutory mandatory minimum." Id.

    Petitioner filed his motion under § 2255 on January 22, 2019. ECF No. 1. Judge Simandle informed Petitioner of his rights and responsibilities under United States v. Miller, 197

---

[1] This matter was assigned to Judge Simandle following Judge Irenas' passing, and to the undersigned on August 7, 2019 following Judge Simandle's passing.

F.3d 644 (3d Cir. 1999).  ECF No. 3.  Petitioner subsequently submitted an amended petition.  ECF No. 4.  Judge Simandle directed the United States to answer the petition on May 10, 2019.  ECF No. 6.  The United States filed a motion to dismiss, ECF No. 11, which this Court denied as it did not comply with the order to answer, ECF No. 14.  The Court also denied Petitioner's motion for the appointment of counsel without prejudice.  Id.  The United States refiled the motion to dismiss, ECF No. 16, along with its answer, ECF No. 15.  Petitioner filed his opposition to the motion to dismiss.  ECF No. 17.

Petitioner raises three grounds for relief under § 2255: (1) sentencing counsel was ineffective for failing to object to a gun enhancement; (2) sentencing counsel was ineffective for failing to ensure that the defendant appeared at resentencing; and (3) the gun enhancement prevented Petitioner from being able to take advantage of Amendment 782.

II.  STANDARD OF REVIEW

Section 2255 provides in relevant part that

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Under Strickland v. Washington, a claim of ineffective assistance of counsel requires a petitioner to show that (1) defense counsel's performance was deficient and (2) the deficiency actually prejudiced the petitioner. 466 U.S. 668, 687 (1984). The first Strickland prong is satisfied if defense counsel made errors that were serious enough such that counsel was not functioning as the "counsel" that the Sixth Amendment guarantees. Id. This is a high standard, especially given the strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). A court must be "highly deferential" to a defense counsel's decisions and should not "second-guess counsel's assistance after conviction." Strickland, 466 U.S. at 689; Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996).

For the second Strickland prong, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

III. DISCUSSION

A district court must hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the

8

case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255(b); see also United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005). Here, there are no factual disputes to resolve and the record conclusively demonstrates that Petitioner is not entitled to relief; therefore, the Court will not conduct an evidentiary hearing before addressing the motion to dismiss.

A. Failure to object to sentencing enhancement

Petitioner argues his sentencing counsel[2] provided ineffective assistance of counsel when he did not object to the application of the two-level enhancement for possession of a weapon under U.S.S.G. § 2D1.1(b)(1) at sentencing. "[T]he third circuit, on direct appeal, vacated the robbery count, as well as, the 924(c) associated with that count. However, the district court applied a gun enhancement erroneously because the third circuit vacated all other counts leaving only the drug count." ECF No. 4 at 4. Petitioner has not satisfied either prong of Strickland.

Petitioner cannot meet the first Strickland prong because sentencing counsel did object to the enhancement at sentencing. Counsel argued that application of the enhancement would reward the United States for sentencing manipulation by "making the

---

[2] Petitioner's trial counsel did not represent him for sentencing or direct appeal.

9

need for a gun, as part of the story . . . ."  ECF No. 16-2 at 24:17-19.

> [O]nce someone is targeted, the government in these cases is not satisfied to just entice them into — into a stash house robbery.  It also makes clear, and it does this during the course of the conversations, how much drugs is to be involved and can set that number. . . . This is a situation where there really aren't any drugs, there really isn't a stash house.
>
> . . . .
>
> [B]eyond that, they also create the very need for the use of a gun, which then not only enhances the offense level, increasing it, but also results in a third offense, a separate crime of use of a gun during the commission of a felony in this case, a conspiracy.

Id. at 43:16 to 44:11.

Counsel argued that the United States "spun out of fiction [a crime] which was one that required that he bring a gun to the scene.  And so by doing that, they enticed him into both the drug offense and the firearms offense, as well as the underlying robbery offense, itself."  Id. at 47:8-12.  "The whole crime is . . . created in a way that — that essentially predetermines what the sentencing guidelines are going to be and predetermines — and is meant to essentially force a particularly large punishment by building in multiple offenses at very high levels."  Id. 47:19-24.  Despite counsel's arguments, Judge Irenas disagreed and applied the two-level enhancement while calculating the advisory guideline range at step one of the three step sentencing process.

10

Petitioner also cannot satisfy Strickland's prejudice requirement. The jury found that Petitioner was involved in a conspiracy to distribute at least 5 kilograms of cocaine. Dennis, No. 12-cr-0734 (D.N.J. May 23, 2013) (ECF No. 57 at 2). Section 841 requires a mandatory minimum of 10 years, 120 months, for that weight. 21 U.S.C. 841(b)(1)(A)(ii). After a downward departure at step two of the sentencing process and a further downward variance at step three after a full consideration of all the factors found in 18 U.S.C. § 3553, Judge Irenas sentenced Petitioner to the lowest sentence possible consistent with the jury's verdict, in effect negating any error, if there were any, of the application of the gun enhancement. Therefore, Petitioner is not entitled to relief on this ground as he cannot show that any error affected the outcome of his sentencing.

B.   Failure to ensure Petitioner's presence at resentencing

Petitioner further alleges sentencing counsel was ineffective for failing to make sure Petitioner was present for his resentencing. "Had counsel ensured that the defendant was brought back to court, considering that fact that he was only in the holding facility and not transferred into BOP custody, the defendant could have either requested counsel object to the PSR recommending the enhancement be removed or the defendant could

11

have informed the court himself on the erroneous [U.S.S.G. § 2D1.1(b)(1)] enhancement." ECF No. 4 at 4.

This claim fails because no resentencing hearing occurred after the Third Circuit reversed Counts I and III. Petitioner attended the sentencing hearing on August 1, 2014 at which time he was sentenced to 120 months on Count II. See ECF No. 16-2. After the Third Circuit reversed Counts I and III, counsel filed pretrial motions arguing there should be no new trial on those charges. Dennis, No. 12-cr-0734 (D.N.J. Oct. 16, 2017) (ECF No. 147). Judge Simandle dismissed Counts I and III at the request of the United States on January 26, 2018. Id. (Jan. 26, 2018) (ECF No. 152). No resentencing was required because the Third Circuit did not disturb the 120-month sentence on Count II and the sentence for Count II was not interdependent on the other convictions since it was based on the weight of the cocaine. Dennis, 826 F.3d at 695-96. See United States v. Miller, 594 F.3d 172, 180 (3d Cir. 2010) ("Interdependent offenses result in an aggregate sentence, not sentences which may be treated discretely." (internal quotation marks omitted)). Petitioner's claim fails as he has not satisfied the Strickland standard on this claim.

C.  Sentencing enhancement prevented application of Amendment 782

12

Finally, Petitioner argues he should have been entitled to a sentence reduction under Amendment 782 because the gun enhancement was no longer applicable. "The Probation Officer, the Public Defender, and the United States Attorney's Office all determined that the gun enhancement prevent[ed] the defendant from receiving the retroactive guideline reduction. However, if there is not a guilty verdict on any count that involves a gun, any application of a gun enhancement must be considered [erroneous]." ECF No. 4 at 5.

Petitioner has procedurally defaulted on this claim because he did not appeal the Court's September 27, 2019 order that denied the sentence reduction. "When a defendant fails to raise a claim on direct appeal, he 'procedurally defaults' that claim for purposes of collateral review." United States v. Nelson, No. 1:09-CR-211, 2017 WL 4648145, at *5 (M.D. Pa. Oct. 17, 2017). Petitioner could have filed an appeal of the order denying his § 3582 motion but he did not.

Procedural defaults may be overcome by showing cause and prejudice. Petitioner states he did not raise this claim on direct appeal "because there was no need to. The Court of Appeals dismissed any conduct involving a firearm. The

13

enhancement was applied after remand for resentencing."[3] ECF No. 4 at 6. This is not cause for failing to appeal the order. Although the claim may not have been appropriate to raise on direct appeal, Petitioner could have appealed the Court's order denying the sentence reduction. 28 U.S.C. § 1291; see also United States v. Ware, 641 F. App'x 108 (3d Cir. 2016) (per curiam). Petitioner has not provided a sufficient reason to excuse his failure to appeal.

Petitioner also cannot show he will be prejudiced if the Court does not excuse the default because his claim is meritless. As discussed supra, Petitioner was sentenced to the mandatory minimum for the drug weight involved in the conspiracy. Moreover, Petitioner did "not qualify for a reduction because he was designated a Career Offender at the time that he was sentenced. A Career Offender is ineligible even if . . . the District Court . . . departed below the Career Offender Guideline range upon determining under U.S.S.G. § 4A1.3 that Career Offender status overrepresented the severity of the defendant's criminal history." Dennis, No. 12-cr-0734 (D.N.J.

---

[3] Petitioner frequently asserts the Third Circuit remanded "for resentencing," but this is a misunderstanding of the court's order. The Third Circuit concluded Judge Irenas should have given the jury an instruction on entrapment for the robbery charges and remanded for a new trial on those counts, which were only dismissed when the United States elected not to retry Petitioner. The mandate did not order resentencing on Count II.

14

Sept. 27, 2019) (ECF No. 161).  "Amendment 782 . . . alters the offense levels for drug crimes but does not affect the offense levels for career offenders . . . ."  <u>Ware</u>, 641 F. App'x at 111.  "[C]areer offenders granted § 4A1.3 departures are not eligible for resentencing."  <u>United States v. Flemming</u>, 723 F.3d 407, 413 (3d Cir. 2013) (citing U.S.S.G. app. C, amend. 759).

Because Petitioner has not shown cause and prejudice to excuse his procedural default, and is meritless in the alternative, this claim is denied.

IV.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a § 2255 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This Court denies a certificate of appealability because jurists of reason would not find it debatable that Petitioner has not made a substantial showing of the denial of a constitutional right.

V. CONCLUSION

For the foregoing reasons, the United States' motion to dismiss is granted.  The amended motion to correct, vacate, or set aside Petitioner's federal conviction will be dismissed with prejudice, and no certificate of appealability shall issue.

An appropriate order will be entered.


Dated: February 25, 2021            s/ Noel L. Hillman
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.